# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| KAREN E. BOHANNON, | : Case No. 3:18-cv-0414 |
| Plaintiff, | : District Judge Walter H. Rice |
| | : Magistrate Judge Sharon L. Ovington |
| vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

## REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Karen Bohannon has many health problems: degenerative disc disease, cervical spondylosis, L4-L5 bulging disc, leiomyoma of uterus, hypertension/high blood pressure, asthma, breast abscess (left), and lumbar radiculopathy. In June 2015, she applied for Disability Insurance Benefits and Supplemental Security Income. She asserted that her health problems preclude her from holding down full-time job and thus constitute one or more disabilities.

The Social Security Administration denied Plaintiff's applications based on Administrative Law Judge Gregory G. Kenyon's decision. He determined that despite Plaintiff's health problems, she could do many jobs that exist in the national economy. She was, therefore, not under a benefits-qualifying disability, in ALJ Kenyon's view.

---

[1]Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff now challenges ALJ Kenyon's decision—particularly his evaluation of her longitudinal medical records and the opinions provided by her treating physicians Rajendra Aggarwal, M.D., and Matthew Noordsij Jones, M.D. She seeks an Order reversing the ALJ's decision and remanding for payment of benefits. She alternatively seeks an Order vacating the ALJ's decision and remanding for further proceedings.

The Commissioner finds no error in ALJ Kenyon's decision and contends that substantial evidence supports his decision. The Commissioner thus asks the Court to affirm the ALJ's decision.

## II. Plaintiff and Her Testimony

Plaintiff was 39 years old on the date she allegedly became disabled (January 1, 2010). Her formal education stopped after she completed the eleventh grade in high school. (Doc. #5, *PageID* #337). She has worked as a store laborer and stock clerk.

Plaintiff testified during a hearing held by ALJ Kenyon that she sometimes has neck pain so serious that she cannot move her neck to the right or left. Her neck pain radiates down to her left shoulder and to her middle and low back. She describes her neck pain as sharp, "like a constant needle feeling…." *Id*. at 79. She noted, "It's real heavy. It pulls a lot. [I]t gets to the point where it throws my balance off sometimes. I have my cane, but also I use walls." *Id*. Her pain equates to the level of ten, the most severe pain on a zero-to-ten scale. It is sometimes lower than ten but it is often at ten. When she drives, she must turn her body, rather than her neck, to look around. She also has trouble moving her head up and down. When she looks up, she loses her balance. *Id*.

at 80.

Plaintiff gets headaches, sometimes twice a week, associated with her neck pain. Her headache pain is sharp and sometimes lasts up to six hours.

Plaintiff also experiences daily pain in her lower back. She explained, "It feels like … a needle, someone sticking it. It's sharp. I can walk a few steps sometimes and I completely lose my balance. It's embarrassing, but I can go be in a store and I actually have to look around to see what I can hold on to in case I lose my balance. But it's tiresome. It's … like someone is taking a sharp needle and hitting it in one spot." *Id*. at 82. She rated her back pain as ten—the most severe level of pain on the ten-point scale. Medication helps reduce her pain for five to six hours. She has tried physical therapy; it has not helped. *Id*. at 88.

Plaintiff has instability in her left leg, which will give out and cause her problems with balancing. She uses a cane much of the time and had done so for approximately two and one-half years. She can sometimes go without is when she is inside her house. When she leaves home, she always takes a cane with her.

Plaintiff has asthma. She experiences asthma attacks at night. She treats them with Albuterol and Anoro Ellipta (an inhaler). She experiences more asthma attacks during the winter when the air is cold and during misty rain. Her attacks occur "maybe a couple of times … a week." *Id*. at 84. She smokes half a pack of cigarettes each day.

Plaintiff has a lot of anxiety. She gets nervous and very depressed because she is isolated in her house and going through so much. She said, "I feel I'm suffering every

3

day." *Id*. at 89. Her memory and concentration are not good. She told the ALJ, "Sometimes it's hard for me to remember if I'm talking with my counselor or just in general. I can't even remember some things that [were] said." *Id*. She gets along with people, but she isolates herself every day. Anxiety causes patches of her hair to fall out (a condition called Telogen effluvium).

Plaintiff testified that she doesn't lift any weight except for her purse. She estimated that the most she could lift is five pounds. She can stand for about 10 or 15 minutes. She does not walk more than about 20 steps. When she shops, she uses an electric cart. She can sit for no longer than 30 minutes.

Plaintiff is not able to do household chores; her daughter does them for her. She spends her day mostly lying on a heating pad that vibrates. She only leaves the house to go to the doctor or the grocery store. This typically occurs once a month. She does not visit friends or family.

## III. Medical Evidence

### A. Dr. Aggarwal

Plaintiff began seeing Dr. Aggarwal in August 2010. (Doc. #5, *PageID* #398). She underwent a lumbar spine MRI in July 2010, which showed left posterolateral disc protrusion combined with mild facet arthropathy at L4-L5 that causes moderate left-side and mild right-side neuroforaminal stenosis "and with questionable minimal impingement of left side exiting nerve root fibers at this level." *Id.* at 826. She also has facet arthropathy, slightly more on the left side, at L4-L5 and L5-S1. *Id*.

Plaintiff underwent an EMG in May 2013 due to her chronic low back pain in lower lumbar area with radiation along the lateral aspect of the left thigh and hip since October 2012. *Id.* at 401. She reported no previous back injuries or back surgery. She walked with a normal gait pattern. Heel and toe walking revealed no weakness of extensor hallucis longus or gastrocnemius. Straight leg raises were negative. She exhibited normal strength in the bilateral lower extremities. The EMG results were assessed as normal. *Id*.

An MRI of the lumbar spine taken in May 2014 showed degenerative disc disease at L4-5 and associated moderate left neural foraminal and mild spinal canal narrowing predominantly due to facet hypertrophy and ligamentum flavum thickening. *Id.* at 1637-38. X-rays taken of the cervical spine in February 2015, showed moderate cervical spondylosis at C5-6 and development of cervical spondylosis at C4-5. *Id.* at 1634.

In October 2014, Dr. Aggarwal completed an Ohio Job & Family Services form. He reported that Plaintiff's medical condition includes a lumbar disc bulge at L4-L5, left-shoulder radiculopathy, and hypertension. *Id*. at 1688. He noted that her health status was poor but stable. *Id*. at 1689. He opined that she was limited to lifting and carrying up to 5 pounds and was markedly limited in repetitive foot movements and extremely limited in pushing/pulling and bending, and moderately limited in reaching. He further opined that Plaintiff was unemployable for a period of 12 months or more and that her health status was poor but stable. *Id*.

Dr. Aggarwal saw Plaintiff regularly through at least January 2016. His records

repeatedly document her decreased range of motion, tenderness, bony tenderness, pain and spasm in her lumbar and cervical spinal areas. *Id.* at 385-98, 949-1074, 1098-1138.

**B.    Dr. Jones**

Dr. Jones treated Plaintiff for issues related to her asthma. *Id.* at 1583-1641. In December 2016, Dr. Jones listed Plaintiff's medical conditions as asthma, cervical spondylosis, lumbar degenerative disc disease, and hypertension. He noted that her health status was "improving with [treatment]." He did not opine about Plaintiff's functional capacity, but he did think that Plaintiff was markedly limited in bending and pushing/pulling. *Id.* at 1692-93.

**C.    Diane Manos, M.D. and Steve E. McKee, M.D.**

In October 2015, Dr. Manos reviewed Plaintiff's records and determined that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day; and sit for 6 hours. *Id.* at 189. Position change may be accomplished with normal breaks. *Id.* at 190. She could climb ramps and stairs, stoop, kneel, crouch, and crawl occasionally but never climb ladders, ropes, and scaffolds. Dr. Manos thought that Plaintiff was limited in overhead reaching and should avoid all exposure to hazards. *Id.* at 190-91. Dr. McKee reviewed Plaintiff's records in February 2016 and confirmed Dr. Manos' assessments. *Id.* at 210-12.

**IV.    "Disability" Defined and Standards of Review**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other

eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—*i.e.*, "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry— reviewing the correctness of the ALJ's legal

criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.   **The ALJ's Decision**

ALJ Kenyon evaluated the evidence under each of the 5 sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] At step 4 of his review, he concluded, in part, that the most Plaintiff could do in a work setting despite her impairments—her residual functional capacity—or , *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)—is light work with the following exceptions:

> she can occasionally crouch, crawl, kneel, stoop, balance and climb ramps and stairs. [She] must avoid climbing ladders, ropes, and scaffolds and should not work around hazards such as unprotected heights or dangerous machinery. [She] must avoid concentrated exposure to respiratory irritants. She can occasionally perform overhead reaching bilaterally. [She] is limited to performing unskilled, simple, repetitive tasks and limited to jobs in which she would be permitted to sit for fifteen minutes per hour for a total of two hours per day.

(Doc. #5, *PageID* #56). The ALJ further concluded at step 4 that Plaintiff cannot

---

[2]The remaining citations to the Regulations will identify the pertinent Disability Insurance Benefits Regulation without referencing the corresponding Supplemental Security Income Regulation.

perform any of her past relevant work. *Id*. at 176.

At step 5, the ALJ found that Plaintiff could perform jobs that exist in significant number in the national economy. These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 63.

## VI. Discussion

Plaintiff argues that the ALJ failed to properly apply the treating physician rule to Dr. Aggarwal's opinions by conflating the controlling-weight analysis with the deferential-weight analysis. In Plaintiff's view, this erroneously placed the treating physician's opinions on legal equal footing with the opinions of non-treating medical sources.

The Commissioner counters that the ALJ considered Dr. Aggarwal's status as Plaintiff's treating physician but focused on the factors of supportability and consistency. The Commissioner asserts that the ALJ "fairly looked at the fact that Dr. Aggarwal provided minimal 'relevant evidence' to support his opinion[.]" (Doc. #11, *PageID* #1725 (citations omitted)). And the Commissioner argues, "As the ALJ pointed out, the medical evidence in the record did not support Dr. Aggarwal's extreme opinion[.]" *Id.* (citation omitted).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citations

omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).[3] The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the ALJ's reasons. *Id*.

ALJ Kenyon essentially placed no weight on Dr. Aggarwal's opinion. (Doc. #5,

---

[3]Soc. Sec. Ruling 96-2p has been rescinded, but the rescission does not apply to applications—like Plaintiff's—filed before March 17, 2017. *See* 82 FR 15263-01, 2017 WL 1105348; 82 FR 5844-01, 2017 WL 168819.

*PageID*# 61). He first noted that Dr. Aggarwal completed a "checkbox medial evaluation" of Plaintiff's impairments. *Id*. Then, after describing Dr. Aggarwal's opinions, the ALJ observed that Dr. Aggarwal did not offer any medical evidence to support his limitations, and the ALJ viewed the evidence as showing "relatively benign degenerative changes in both [Plaintiff's] back and neck …." *Id*. The ALJ found "of relevance" that Plaintiff "has not been advised to undergo any form of invasive surgical operation to treat her lumbar or cervical degenerative disease. Consequently, the factors of supportability and consistency do not warrant giving controlling or deferential weight to the opinions offered by Dr. Aggarwal or deviating from the residual functional capacity provided in the past decision."[4] *Id.*

The ALJ's evaluation of Dr. Aggarwal's opinions did not meaningfully consider his opinions under the required legal criteria but instead collapsed the two-step evaluation procedure mandated by regulation into one by focusing on the "supportability" and "consistency" factors. *See* 20 C.F.R. §§404.1527(c)(1)-(6). This constitutes error because the "supportability" and "consistency" factors, along with the others listed in the regulations, "are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart*, 710 F.3d at 376 (emphasis added) (citation omitted). Indeed, "[t]he source of the opinion… dictates the process by which the Commissioner accords it weight." *Id.*

As a general matter, an opinion from a medical source who has

---

[4]The "past decision" refers to ALJ Irma J. Flottman's non-disability decision in January 2014. (Doc. #5, *PageID* #167-78).

> examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Id*. at 375. And, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing and parenthetically quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.") (other citation omitted)). By collapsing the analysis of Dr. Aggarwal's opinions into one step, the ALJ failed to evaluate his opinions under the correct legal criteria.

The Commissioner points out that the ALJ declined to credit Dr. Aggarwal's opinions by relying on the "relatively benign degenerative changes" in Plaintiff's back and neck, and the ALJ relied on the minimal results of her 2010 lumbar MRI and 2014 imaging. (Doc. #11, *PageID* #1726 (quoting *PageID* #61)). This, however, overlooks that Plaintiff's lumbar MRI showed moderate left neural foraminal narrowing and her neck x-rays revealed moderate cervical spondylosis at C5-6 and development of cervical spondylosis at C4-5. (Doc. #5, *PageID* #s 1634, 1637-38). "Substantial evidence is not

simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)) (internal citations and quotation marks omitted). The ALJ compounded this problem by not recognizing that Dr. Aggarwal's treatment notes repeatedly document, over the course of years, Plaintiff's decreased range of motion, tenderness, bony tenderness, and pain in her lumbar and cervical spines. (Doc. #5, *PageID* #s 949-1074, 1098-1138). Dr. Aggarwal's treatment notes are also consistent with later treatment notes from Cara Perez, M.D., documenting clinical findings such as antalgic gait with a cane, difficulty rising from a seating position, unable to perform heel/toe gait, moderate tenderness and limited range of motion in her lumbar spine, pain with extension and flexion, and positive lumbar-facet loading. *Id*. at 1645-81.

Additionally, the ALJ placed partial weight on the state-agency consultants' opinions without providing a single reason. He instead merely indicated that he evaluated their opinions. (Doc. #5, *PageID* #61). Although he declined to accept one aspect of their opinion by finding that Plaintiff's ability to perform light work was tempered by her limited ability to sit and stand, *id*., his consideration of the state-agency consultants' opinions was non-analytical and conclusory. This constitutes error because he probed Dr. Aggarwal's opinion with greater scrutiny. "A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely

the inverse of the analysis that the regulation requires." *Gayheart*, 710 F.3d at 379 (citations omitted).

Turning to Dr. Jones, the ALJ mentioned some of his treatment notes but did not mention or weigh his opinion, particularly his conclusion that Plaintiff was markedly limited in bending and pushing/pulling. (Doc. #5, *PageID* #s 60-61). This oversight constitutes error. *See Bowen v. Comm'r of Social Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) ("The ALJ's complete failure to mention Dr. Holean plainly violated the terms of [20 C.F.R.] § 1527(d)(2)."). The Commissioner argues that, if anything, this was harmless error because "Dr. Jones's opinion was essentially identical to Dr. Aggarwal's," and the ALJ properly and reasonably explained why he discounted Dr. Aggarwal's opinions." (Doc. # 11, *PageID* #1729). But because the ALJ erred in his weighing of Dr. Aggarwal's opinions, the ALJ's conclusions about Dr. Aggarwal's opinions cannot serve to excuse his failure to consider Dr. Jones's opinion.

An ALJ's failure to address a treating source's opinion may constitute harmless error when, for instance, "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it …." *Wilson*, 378 F.3d at 547. Dr. Jones's opinion about Plaintiff's markedly limited ability to bend, push, and pull is consistent with Dr. Aggarwal's treatment notes as well as with treatment notes from Dr. Perez. (Doc. #5, *PageID* #s 1643-87). As such, Dr. Jones' opinion is not so patently deficient that it could not be credited, and as a result, the ALJ's failure to address was not harmless error.

14

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

## VII. Remand

A remand is appropriate when an ALJ's decision is unsupported by substantial evidence or when an ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted if the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the

evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Karen Bohannon was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

February 7, 2020                                         *s/Sharon L. Ovington*
                                                                         Sharon L. Ovington
                                                                         United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).